**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **BRANDON CHARLES NELSON**, <br><br> Defendant. | Case No. 3:25-cr-00525-IM <br><br> **ORDER DENYING MOTION FOR NEW TRIAL** |

Scott E. Bradford, United States Attorney, Arin Heinz, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for the United States.

Per Olson, Hoevet Olson, PC, 1000 SW Broadway, Suite 1740, Portland, OR 97205. Attorney for Defendant.

**IMMERGUT, District Judge.**

Defendant Brandon Charles Nelson was charged with one count of Escape from Custody in violation of 18 U.S.C. § 751(a) and 18 U.S.C. § 4082(a). ECF 10. After a two-day jury trial, the jury returned a verdict of guilty. ECF 35. Before this Court is Defendant's Motion for New Trial. ECF 40. For the reasons set forth below, Defendant's Motion for New Trial is DENIED.

**STANDARDS**

Federal Rule of Criminal Procedure 33 provides that a court, on the motion of a defendant, "may vacate any judgment and grant a new trial if the interest of justice so requires."

PAGE 1 – ORDER DENYING MOTION FOR NEW TRIAL

## A. False Testimony

Under *Napue v. Illinois*, 360 U.S. 264 (1959), convictions obtained through the use of false testimony violate due process. A *Napue* claim requires that "(1) testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Hampton v. Shinn*, 143 F.4th 1047, 1068 (9th Cir. 2025) (citation modified). "A *Napue* claim never succeeds if the defendant cannot prove actual falsity." *Id.* Moreover, "[t]he falsehood must be material," and to determine *Napue* materiality, courts must assess "whether there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Hampton*, 143 F.4th at 1068 (quoting *Hayes v. Brown*, 399 F.3d 972, 985 (9th Cir. 2005) (en banc)). When the government "presents false evidence, a defendant is entitled to a new trial 'if there is a reasonable probability that [without the evidence] the result of the proceeding would have been different.'" *United States v. Young*, 17 F.3d 1201, 1204 (9th Cir. 1994) (quoting *United States v. Endicott*, 869 F.2d 452, 455 (9th Cir. 1989)) (alterations in original).

## BACKGROUND

In 2021, Defendant was convicted of one count of Felon in Possession, in violation of 18 U.S.C. § 922(g), and was sentenced to serve thirty-six months in the custody of the Bureau of Prisons ("BOP"), with thirty-six months of supervised release to follow. *United States v. Nelson*, No. 3:20-cr-00308-AB (D. Or. Dec. 9, 2021), ECF 40. On February 25, 2025, Defendant's supervised release was revoked, and as a result, he was sentenced to twelve months in the custody of BOP, with eighteen months of supervised release to follow. *Id.*, ECF 75. BOP designated Defendant to serve his custodial sentence at Federal Correctional Institution, Victorville ("FCI Victorville"). ECF 23 at 2. In late 2025, Defendant was designated to complete the remainder of his custodial sentence at the Northwest Regional Reentry Center ("RRC") in

PAGE 2 – ORDER DENYING MOTION FOR NEW TRIAL

Portland, Oregon. *Id.* Defendant was approved to travel to the RRC via unescorted furlough and required to report by November 20, 2025 at 11 p.m. *Id.* Defendant failed to report to the RRC by that deadline. *Id.* His failure to report as ordered resulted in the Escape charge at issue in this case.

A jury trial commenced on February 24, 2026. ECF 33. After a two-day trial, the jury returned a verdict of guilty on the single count of Escape. ECF 35.

The case officer, Deputy U.S. Marshal Frederick Bulzan, testified to the following events at trial. On December 5, 2025, Bulzan called Defendant's father and told him that his son had a warrant out for his arrest. Opp'n, Ex. 2, ECF 41-2 at 6, 4/24/2026 Tr. 6:21–7:3. Defendant's father asked for a minute to call Defendant and see if he would be willing to turn himself in. *Id.* at 7:5–6. Defendant's father called Bulzan back and said that Defendant was at Motel 6 at Troutdale and was willing to turn himself in. *Id.* at 7:8–10. Bulzan called the motel, was patched through to Defendant's room, and spoke to Defendant on the phone. *Id.* at 7:11–13. Defendant said he would be willing to turn himself in but wanted to shower first. *Id.* at 7:13–15. Shortly after, Bulzan arrived at the Troutdale Motel 6 and took Defendant into custody. *Id.* at 8:9–19.

On March 12, 2026, Defendant[1] filed the motion now before this Court ("Mot."), ECF 40. Defendant argues that he is entitled to a new trial because Bulzan testified falsely. *Id.* at 1–2. Defendant argues that Bulzan's testimony that Bulzan called Defendant's father differs from his arrest report, which did not describe Bulzan first reaching out to Defendant's father to request his assistance. *Id.* at 2. Defendant argues that Bulzan's testimony "cast him in a negative light by

---

[1] Defendant mailed a pro se motion to the Court, which his counsel paraphrased in the present motion. Mot., ECF 40; *see id.*, Ex. 1, ECF 40-1 at 2–4. His counsel later filed a short reply in support of the motion. Reply, ECF 42. This Court considers all of the briefing in evaluating Defendant's request for mistrial.

PAGE 3 – ORDER DENYING MOTION FOR NEW TRIAL

failing to portray him as taking the initiative to turn himself in." *Id.* The Government responds that Bulzan did not commit perjury and that his testimony was consistent with the arrest report. Opp'n, ECF 41 at 3–6. The Government also argues that the challenged statement is immaterial. *Id.* at 6.

In reply, Defendant submits new information from the draft presentence report ("PSR") produced to the parties. Reply, ECF 42 at 1. Defendant's mother reportedly called U.S. Probation to report that Defendant wanted to turn himself in but he lacked transportation. *Id.* Defendant argues that this information suggests Defendant "initiated the process of surrendering by having his mother notify probation that he wanted to turn himself in." *Id.* at 2. Defendant then asserts that "[p]robation likely contacted the U.S. Marshal's office to effect the arrest." *Id.* In Defendant's view, Bulzan "should have testified that, through his mother, defendant initiated the process of turning himself in, because otherwise the jury was left with the inaccurate impression that defendant surrendered only because the U.S. Marshal reached out to his family." *Id.*

## DISCUSSION[2]

This Court agrees with the Government that Bulzan did not testify falsely at trial and that the issue Defendant raises is not material. As explained below, Defendant does not make out a *Napue* claim, and this Court denies Defendant's motion.

---

[2] A motion for a new trial must be filed within fourteen days unless the motion is based on newly discovered evidence. Fed. R. Crim. P. 33(b). However, Federal Rule of Criminal Procedure 45 allows a court to extend deadlines on its own or for good cause on a party's motion in two circumstances: (1) before the originally prescribed or previously extended time expires, or (2) after the time expires if the party failed to act because of excusable neglect. Fed. R. Crim. P. 45(b)(1)(A)–(B). Defendant's trial concluded on February 25, 2026, ECF 34, making his motion for new trial due on March 11, 2026. The Clerk of the Court received Defendant's handwritten pro se motion for mistrial on March 9, 2026. Mot., ECF 40 at 1. The Clerk of the Court then sent the letter to his counsel of record. *Id.*, Ex 1, ECF 40-1 at 1. This motion was filed on March 12, 2026. Mot., ECF 40. However, this Court finds that one-day delay to be excusable neglect. The

PAGE 4 – ORDER DENYING MOTION FOR NEW TRIAL

First, Bulzan did not testify falsely at trial. This Court agrees with the Government's characterization that "Bulzan's testimony at trial was consistent with his arrest report, with DUSM Bulzan simply expounding on the details contained in his report during his testimony." Opp'n, ECF 41 at 4. In that one-paragraph arrest report, Bulzan wrote that he "received a call from [Defendant]'s father stating he was ready and willing to turn himself in." Opp'n, Ex. 1, ECF 41-1 at 1. Bulzan called Defendant's room at the Motel 6 to "ensure [Defendant] resided there and was indeed willing to amicably turn himself in." *Id.* At trial, Bulzan testified that he called Defendant's father and told him that his son had a warrant for his arrest. *Id.*, Ex. 2, ECF 41-2 at 6, 4/24/2026 Tr. 6:21–7:3. Bulzan added that Defendant's father asked for a minute to give Defendant a call and see if he would be willing to turn himself in. *Id.* at 7:5–6. Consistent with his arrest report, Bulzan testified that Defendant's father called him and said that Defendant was at a Motel 6 and willing to turn himself in. *Id.* at 7:8–10. Also consistent with his arrest report, Bulzan testified that he spoke to Defendant, who said he would be willing to turn himself in. *Id.* at 7:13–14. Bulzan's trial testimony added that Defendant asked to shower before being taken into custody. *Id.* In sum, Bulzan expounded upon his description from his report and did not testify falsely.

In reply, Defendant raises new points about his mother's involvement in his arrest. *See* Reply, ECF 42 at 1–2. "New arguments may not be introduced in a reply brief." *United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992). In any event, Defendant's new arguments do not change the analysis. The draft PSR says that Defendant's mother called U.S. Probation to report that Defendant wanted to turn himself in but lacked transportation. Reply, ECF 42 at 1.

---

small length of the delay did not prejudice the government, and the circumstances suggest Mr. Nelson attempted to comply with Rule 33(b)'s fourteen-day deadline.

While Defendant argues that "[p]robation likely contacted the U.S. Marshal's office to effect the arrest" after Defendant "initiated the process of surrendering by having his mother notify probation that he wanted to turn himself in," *id.* at 2, this is unsupported speculation. Further, at trial, Defense counsel had the opportunity to present evidence and cross-examine Bulzan about this topic and did not. Accordingly, this Court concludes that Defendant has not shown any "actual falsity" in Bulzan's testimony. *Hampton*, 143 F.4th at 1068.

Second, Defendant cannot establish the materiality of Deputy Bulzan's statements. This Court agrees with the Government that "Bulzan's testimony about the sequence of phone calls was not material because it was collateral to guilt and not relevant to any of the elements of the offense of escape." Opp'n, ECF 41 at 6; *see Hampton*, 143 F.4th at 1068 (defining *Napue*'s materiality prong as "whether there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury'" (quoting *Hayes*, 399 F.3d at 985)). A defendant's purported willingness to turn himself in almost two weeks after the date on which he was to report to the RRC, before any actual surrender, is not material. Defendant failed to timely report to the RRC on November 20, 2025, and until December 5, 2025, Defendant's whereabouts were unknown to federal authorities. Whether one of Defendant's parents called first or Bulzan called Defendant's father first is not material. Therefore, this Court concludes that no constitutional violation occurred and that Defendant is not entitled to a new trial.

## CONCLUSION

For the reasons stated above, Defendant's Motion for New Trial, ECF 40, is DENIED.

PAGE 6 – ORDER DENYING MOTION FOR NEW TRIAL

**IT IS SO ORDERED**.

DATED this 18th day of May, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge